**SO ORDERED.**

**SIGNED this 16 day of April, 2007.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

SHREEKRISHNA, LLC

    Debtor.                                            Case No. 06-03126-8-JRL

_____

## ORDER

This case came before the court on the attorney's report and application for approval of compensation and reimbursement of expenses filed by Trawick H. Stubbs, Jr. of Stubbs & Perdue P.A. ("Stubbs & Perdue"), as counsel for the debtor. On March 26, 2007, the court conducted a hearing on this matter in Raleigh, North Carolina.

### BACKGROUND

On October 3, 2006, Shreekrishna, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On November 3, 2006, the debtor filed an application to retain Stubbs & Perdue as its attorney under §§ 327 and 329 of the Bankruptcy Code. Filed with the application was an affidavit by Trawick H. Stubbs, Jr. indicating that Stubbs & Perdue received a prepetition retainer from the debtor in the amount of $29,763.85. From the retainer, $14,988.41 was paid to the firm for fees and expenses incurred prior to the bankruptcy. Stubbs & Perdue

also filed a disclosure of compensation in accordance with §§ 328(a) and 329(a) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016. The firm disclosed that it held the remainder of the prepetition retainer in the amount of $14,775.44 in trust for attorney's fees. The court entered an order on November 27, 2006, authorizing the employment of Stubbs & Perdue as counsel for the debtor.

Stubbs & Perdue now requests compensation of $12,777.50 and $697.77 for reimbursement of expenses, pursuant to 11 U.S.C. § 503(b), for a total of $13,475.27. It also requests compensation of $14,585 and $282.99 for reimbursement of expenses pursuant to 11 U.S.C. § 506(c), as they related to reasonable, necessary costs and expenses of preserving or disposing of property for the benefit of creditors. The total amount of its fee request under § 506(c) is $14,876.99. Both fee requests are for the period beginning October 3, 2006 to February 15, 2007.

## DISCUSSION

*Compensation and Reimbursement of Expenses Pursuant to 11 U.S.C. § 503(b)*

Stubbs & Perdue filed its fee application pursuant to 11 U.S.C. § 503(b) seeking the allowance of fees in the amount of $13,475.27. The prepetition retainer of $14,775.44 is currently in the firm's trust account, and Stubbs & Perdue seeks authority to apply it to the § 503(b) fees. The Bankruptcy Administrator does not question the reasonableness of the amounts sought by Stubbs & Perdue.[1] Instead, she argues that there is not enough money to pay all the

---

[1] The Bankruptcy Administrator identified a December 4, 2006 entry from Stubbs & Perdue's itemization of services that was incorrectly classified. The entry was in the amount of $357.50 and was classified as a § 503(b) fee. However, the fee was incurred as a result of the sale of debtor's property, and the debtor agreed it should be classified as a 506(c) fee. Therefore, the amount of § 503(b) fees sought is reduced to $13,117.77.

2

administrative expenses in full, and the retainer should be split pro rata among the administrative claimants.

The Bankruptcy Administrator's argument has been addressed by several courts in the context of a converted Chapter 7 case. Attorneys in those cases took retainers prior to filing Chapter 11 petitions for their clients. The debtors' cases were later converted to Chapter 7, and the attorneys sought to apply the Chapter 11 retainers to their pre-conversion fees. The majority of courts allowed the attorneys to apply the retainers to the pre-conversion fees based on a finding that the attorneys had a lien or security interest in the retainers. Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.), 339 B.R. 730, 732 (B.A.P. 9th Cir. 2006)(holding that a professional with a valid prepetition security retainer that has been properly documented, disclosed, and approved by the court is not required to turn it over in the interest of equal treatment under § 726(b)); In re Appalachian Star Ventures, Inc., 341 B.R. 222, 228 (Bankr. E.D. Tenn. 2006)(holding that an attorney had a lien on a retainer paid by the debtor, and § 726(b) was not applicable because the attorney was not equally situated with other administrative claimants); In re Atlas Contractors, Inc., No. 03-21319, 2004 Bankr. Lexis 802, at *12 (Bankr. E.D. Ky. June 16, 2004)(finding that the attorney had a security interest in the prepetition retainer); In re Carolina Premier Medical Group, No. 00-82322, 2001 WL 1699220, at *3-4 (Bankr. M.D.N.C. Aug. 20, 2001)(holding that a security retainer held by an attorney constitutes a possessory security interest under the Uniform Commercial Code).

There are three basic classifications of retainer agreements. The first type is an engagement retainer, where the attorney is paid to ensure the attorney's availability to represent the client. In re Equipment Services, Inc., 290 F.3d 739, 746 (4th Cir. 2002). The second type is

3

a "prepayment for all future services to be performed, amounting to a flat fee." Id. These two arrangements allow the attorney to acquire title to the retainer fee at the time it is received. Id. The third type is a security retainer "in which the attorney holds the retainer for the client as a security for the payment of future fees, then the retainer so held, less any fees charged against it, constitutes the property of the client." Id.

"In determining what category a specific retainer falls within, courts generally review the description contained in the professional's application for employment, the terms of any retainer agreement, and testimony of the debtors and professionals." In re Pannebaker Custom Cabinet Corp., 198 B.R. 453, 459 (Bankr. M.D. Pa. 1996). Unless the professional shows otherwise, a retainer will usually be classified as a security retainer. Id. at 459-60.

In the instant case, the agreement between Stubbs & Perdue and the debtor prescribed how the services would be billed. It also provided that the debtor would receive a credit toward those services based upon the initial retainer it paid. Additionally, Stubbs & Perdue acknowledged it viewed the agreement as creating a security retainer and not a flat fee or an engagement retainer. Under the circumstances, the retainer to Stubbs & Perdue is deemed to be a security retainer.

In order to determine what constitutes property of the estate, one looks to the Bankruptcy Code. The Fourth Circuit has held that a security retainer is property of the estate. In re Equipment Services, Inc., 290 F.3d at 746; In re Printing Dimensions, Inc., 153 B.R. 715, 719 (Bankr. D. Md. 1993). As property of the estate, an attorney cannot take from the retainer until the fees have been earned and approved by the bankruptcy court. Id. at 719. In order to determine the extent and validity of a party's interest in property, courts must look to state law.

Barnhill v. Johnson, 503 U.S. 393, 398 (1992). Therefore, the court must look to the law of North Carolina to determine the nature of Stubbs & Perdue's property rights in the retainer.

North Carolina does not have a statute that specifically provides an attorney with a lien on funds held in that attorney's trust account. See In re Carolina Premier Medical Group, 2001 WL 1699220, at * 3. However, the North Carolina State Bar allows an attorney to require a retainer or advance payment with some exceptions. North Carolina Rules of Prof'l Conduct R 1.5 cmt 4. Additionally, the court in *In re Carolina Premier Medical Group* acknowledged that attorney retainers in Chapter 11 cases are accepted practice. In re Carolina Premier Medical Group, 2001 WL 1699220, at *3. The court explained that there is a risk in Chapter 11 cases that counsel may not get paid in full for their services. Id. "[A]s an inducement to take on a Chapter 11 case, counsel for the Debtor has the right to request a retainer. The retainer serves the purpose for which it is intended: collateral for services to be rendered in a bankruptcy proceeding in which full payment may not be afforded to administrative expense claimants." Id.

Although no North Carolina law specifically addresses the issue of a lien on money in an attorney's trust account, North Carolina has adopted the Uniform Commercial Code. The Uniform Commercial Code allows for the perfection of a security interest in money merely by taking possession of it. N.C. Gen. Stat. § 25-9-313. Therefore, under the Uniform Commercial Code, the "security retained [by the attorney] constitutes a possessory security interest . . . in the funds in the attorney's possession, and remains as collateral for Debtor's counsel to the extent fees are subsequently approved by the Court for payment." In re Carolina Premier Medical Group, 2001 WL 1699220, at *4.

In this case, Stubbs & Perdue has a security interest in the retainer held in its trust

5

account and is a secured creditor up to that amount. Its status as a secured creditor does not *per se* disqualify Stubbs & Perdue as not "disinterested" as required by § 327 of the Bankruptcy Code. See Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.), 339 B.R. at 740-41; In re Carolina Premier Medical Group, 2001 WL 1699220, at *3; In re Martin, 817 F.2d 175, 180-81 (1st Cir. 1987). Instead, disqualification of a professional should be evaluated by the court based on the facts of each case. See In re Harold & Williams Development Co., 977 F.2d 906 (4th Cir. 1992). The debtor in this case applied to the court to retain Stubbs & Perdue as counsel, and the terms and conditions of the employment were disclosed to the court. The court subsequently approved the employment based on the findings that Stubbs & Perdue had no interest adverse to the estate and the employment would be in the best interest of the estate. No additional facts have been provided that would now justify a finding that Stubbs & Perdue should be disqualified as debtor's counsel.

Stubbs & Perdue complied with the Bankruptcy Code's disclosure requirements and fee application process, and no issues have been raised with regards to the reasonableness of the fees sought. The court finds that the compensation and expense reimbursement are just and reasonable, and Stubbs & Perdue is allowed its fees of $13,117.77, pursuant to 11 U.S.C. § 503(b). The approved fees are less then the amount held by Stubbs & Perdue in its trust account. Therefore, Stubbs & Perdue is entitled to use the money in its trust account to pay only the currently approved fees. The balance of the retainer shall remain in the trust account until further order of the court.

***Compensation and Reimbursement of Expenses Pursuant to 11 U.S.C. § 506(c)***

The trustee or a debtor in possession is permitted to "recover from property securing an

allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claims." 11 U.S.C. § 506(c). Stubbs & Perdue requests a total amount of $14,876.99 pursuant to this section. As stated in footnote one, Stubbs & Perdue originally classified an entry for $357.50 as a § 503(b) fee, but this fee was incurred as a cost of sale and should be included with the § 506(c) fees. The court finds the rates charged and services rendered by Stubbs & Perdue are reasonable and just. Stubbs & Perdue is allowed fees in the amount of $15,234.49 pursuant to 11 U.S.C. § 506(c).

## **CONCLUSION**

Based on the foregoing, Stubbs and Perdue's report and application for approval of compensation and reimbursement of expenses is ALLOWED in the amount of $13,117.77 pursuant to 11 U.S.C. § 503(b) and in the amount of $15,234.49 pursuant to 11 U.S.C. § 506(c). Stubbs & Perdue is allowed to apply the security retainer held in its trust account to the payment of the § 503(b) approved fees

"END OF DOCUMENT"